ORIGINAL

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

D-10 MEIUTTENUN BROWN, MD,

        Defendant.
_____/

No. 17-cr-20465
Hon. Denise Page Hood

VIO:  18 U.S.C. § 1349

## SUPERSEDING INFORMATION

THE UNITED STATES OF AMERICA CHARGES:

### General Allegations

FILED USDC - CLRK DET
2018 APR 27 PM4:06

At all times relevant to this Superseding Information:

### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were 65 years of age or over, or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Part B of the Medicare program covered the cost of physicians' services, medical equipment and supplies, and diagnostic laboratory services.

4. National Government Services ("NGS") was the CMS intermediary for Medicare Part A in the state of Michigan. Wisconsin Physicians Service ("WPS") administered the Medicare Part B program for claims arising in the state of Michigan. CMS contracted with NGS and WPS to receive, adjudicate, process, and pay claims.

5. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the State of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC as the Zone Program Integrity Contractor ("ZPIC"). The ZPIC is a contractor that investigates fraud, waste, and abuse. Cahaba was replaced by AdvancedMed in May 2015.

6. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7. Upon certification, the medical provider, whether a clinic, physician, or other health care provider that provided services to Medicare beneficiaries, was able

to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. In its enrollment application, a provider was required to disclose to Medicare any person or company who held an ownership interest of 5% or more or who had managing control of the provider. A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.

8. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9. Medicare would not pay claims procured through kickbacks and bribes.

10. Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered. Medicare regulations required health care providers enrolled with Medicare to maintain

complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

11. Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing, including urine drug testing, the patient must, among other things, qualify for the testing, including urine drug testing, under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

12. For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must be both reasonable and medically necessary. For example, urine drug testing is medically necessary if the patient presents to a physician with a suspected drug overdose. Regular, routine, or recreational drug screenings, however, are not reasonable or medically necessary. Further, the

patient's medical record must include documentation that fully supports the reasonableness of and medical necessity for the urine drug testing.

13. To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

### The Medical Providers

14. Professional Patient Care PLLC ("Professional") was a Michigan corporation doing business at 901 West Grand Blvd., Suite 101, Detroit, Michigan. Professional was enrolled as a participating provider with Medicare and submitted claims to Medicare.

15. Advanced Professional Patient Care PLLC ("Advanced") was a Michigan corporation doing business at 901 West Grand Blvd., Suite 101, Detroit, Michigan. Advanced was enrolled as a participating provider with Medicare and submitted claims to Medicare.

16. National Laboratories, Inc. ("National Laboratories") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 310, Detroit, Michigan and 2100 West Alexis Rd., Ste. B-1, Toledo, Ohio. National Laboratories was enrolled as a participating provider with Medicare and submitted claims to Medicare.

17. Laboratory A is a California corporation that was enrolled as a

participating provider with Medicare and submitted claims to Medicare.

### Defendant and Relevant Individuals

18.     Defendant **MEIUTTENUN BROWN**, a resident of Lucas County, Ohio, was a physician enrolled in the Medicare program, the Medical Director of Professional, and the owner of Advanced.

19.     Tasadaq Ali Ahmad, a resident of Wayne County, was the owner of US Home Health Care, Inc. ("US Home"), a Michigan Corporation doing business at 901 West Grand Boulevard, Detroit MI 48208.

### COUNT 1
### 18 U.S.C. § 1349
### (Health Care Fraud Conspiracy)
### D-1 MEIUTTENUN BROWN

20.     Paragraphs 1 through 19 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

21.     Beginning in or around 2014 and continuing through in or around 2017, in the Eastern District of Michigan, and elsewhere, **MEIUTTENUN BROWN**, did willfully and knowingly combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to commit certain offenses against the United States, that is: to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by

6

means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347.

## Purpose of the Conspiracy

22.   It was a purpose of the conspiracy for **MEIUTTENUN BROWN** and her co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and her co-conspirators in the form of compensation and other remuneration.

## Manner and Means

The manner and means by which the defendant and her co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

23.   **MEIUTTENUN BROWN** certified to Medicare that she would comply with all of Medicare's rules and regulations, including that she would not

knowingly present or cause to be presented a false and fraudulent claim to Medicare or violate the Anti-Kickback Statute.

24. **MEIUTTENUN BROWN**, Tasadaq Ali Ahmad and other co-conspirators ordered or caused the ordering of urine drug testing by National Laboratories, Inc. and Laboratory A that was medically unnecessary, not eligible for Medicare reimbursement and/or not provided.

25. Tasadaq Ali Ahmad paid illegal kickbacks and bribes to **MEIUTTENUN BROWN** in the form of no-interest loans and the referral of Medicare beneficiaries to Professional and Advanced.

26. **MEIUTTENUN BROWN**, Tasadaq Ali Ahmad and other co-conspirators submitted and caused the submission of false and fraudulent claims to Medicare by National Laboratories in the approximate amount of $308,553.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. § 982(a)(7))

27. The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982; and Title 28, United States Code, Section 2461.

28. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461, as a result of the foregoing violation, as charged in Count 1 of this Information, the defendant, **MEIUTTENUN BROWN**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

29. Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the foregoing violations, as charged in Count 1 of this Information, the defendant, **MEIUTTENUN BROWN**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

30. Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of Defendant's violations as charged in Count 1 of this Information.

31. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, **MEIUTTENUN BROWN**, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

_____
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9583
wayne.pratt@usdoj.gov

for _____
ALLAN MEDINA
Assistant Chief
Criminal Division, Fraud Section
211 W. Fort St., Suite 2001
Detroit, MI 48226
(202) 257-6537
allan.medina@usdoj.gov

for _____
JACOB FOSTER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Eighth Floor
Washington, D.C. 20005

(202) 305-3520
jacob.foster@usdoj.gov

Dated: April 27, 2018

11

ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>17-cr-20465 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: SC |

**Case Title:** USA v. Meiuttenun Brown

**County where offense occurred:** Wayne County

**Check One:**   ☒ Felony   ☐ Misdemeanor

FILED USDC - CLRK DET
2018 APR 27 PM 4:06

____ Indictment/ ____ Information --- **no** prior complaint.
____ Indictment/ ____ Information --- based upon prior complaint [Case number:                    ]
____ Indictment/ ✓ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** 17-cr-20465          **Judge:** Hon. Denise Page Hood

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Meiuttenun Brown | 18 U.S.C. § 1349 | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

April 27, 2018
   Date

for Jacob Foster, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 615 - 6521
Fax:   (313) 226 - 0816
E-Mail address: Jacob.Foster@usdoj.gov
Attorney Bar #: CA 250785

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.