## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                    Case No. 17-20465

v.                             Hon. Denise Page Hood

Mieuttenun Brown,

       Defendant(s).

_____/

## ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA [ECF NO. 775]

### I.   INTRODUCTION

Now, before the Court is Defendant's, Meiuttenun Brown, Motion to Withdraw the Plea of Guilty entered on May 29, 2018, See ECF No. 237. [ECF No. 775]. The motion is fully briefed, and the Court held a hearing on the matter on January 10, 2024.[1] For the reasons stated herein, Brown's motion is DENIED.

### II.   BACKGROUND

Brown is one of several defendants charged in connection with an alleged conspiracy to commit health care fraud. On November 3, 2017, federal agents visited Brown at her home regarding their investigation into the alleged conspiracy. Several

---

[1] On April 22, 2025, the Court received a letter from Brown seeking resolution of this pending motion.

1

weeks later, the agents contacted Brown to schedule a second interview and suggested that she retain counsel. On January 3, 2018, Brown retained Richard Kraus at Foster Swift Collins & Smith PC ("Foster Swift") located in Lansing, Michigan. Brown claims Foster Swift specializes in representing medical practices and "never had an attorney…with sufficient experience in criminal health care fraud cases or in the practice of criminal law to handle Dr. Brown's case." [ECF No. 775, PageID.10470].

Brown pled guilty to one count of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349, on May 29, 2018. In support of her motion, Brown asserts that Kraus "rushed to schedule a client proffer within days of being retained and recommended the government's plea offer to [Brown] without ever requesting any pre-indictment discovery [or] conducting a preliminary investigation[.]" *Id*. at PageID.10469-70. Brown further asserts that she relied on the "inept and inexperienced" advice of Mr. Kraus in reluctantly entering the plea agreement upon Kraus persuading Brown that she had no other choice but to enter the plea. *Id*. at PageID.10467. On January 6, 2022, Kraus filed a motion for leave to withdraw as counsel, which was granted. [ECF No. 649, 655]. The Court then appointed attorney Henry Scharg to represent Brown. [ECF No. 656].

Brown brings her motion to withdraw the plea of guilty to one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §1349 on the basis

that Foster Swift's representation was deficient and prejudiced her Fifth and Sixth Amendment rights to effective assistance of counsel and due process of law. *Id.* at PageID.10461. Furthermore, Brown argues that "but for counsel's errors, Brown would not have been placed in legal jeopardy, pleaded guilty, or waived her constitutional right to a trial in this matter." *Id.* at PageID.10462.

During the hearing, Mr. Scharg, Brown's new counsel, echoed the sentiment that Brown's previous counsel provided ineffective assistance from the time the firm was retained on January 2, 2018, until the time counsel withdrew in March of 2022. Mr. Scharg urged that but for counsel's errors, Brown would not have pled guilty or waived her constitutional right to a trial in this matter.

In response, the Government argues that Brown's motion should be denied because "she entered a knowing and voluntary plea in open court" and Brown failed to "identify any authority that would permit her to withdraw her plea under the circumstances[.]" [ECF No. 78, PageID.10734]. The Government further asserts that Brown made her decision "after a review of the evidence against her, including the statements of a cooperating witness…with the advice of counsel, and participated in a fulsome change of plea hearing." *Id.* at PageID.10734-35. The Government contends that the four-year gap between Brown's guilty plea and her motion to withdraw the plea creates a strong presumption of denial and Brown has not provided any fair or just reasons for requesting the withdrawal as required by Federal Rule of

Criminal Procedure 11(d)(2)(B). *Id*. at PageID.10735. Moreover, Brown acknowledged in open court that she was satisfied with her attorney's advice and counsel, had the time she needed to confer with her attorney, and had her questions answered. Finally, the Government acknowledges that the Court "complied rigorously with the requirements of Rule 11, ensuring that Brown understood the consequences of what she was doing and that she was voluntarily entering into the plea. *Id*. at PageID.10738.

Brown contends that she had an "unsure heart and confused mind" about pleading guilty and did not believe that she had committed any conspiracy. [ECF No. 781, PageID.10759-60]. Further, Brown maintains that Kraus was ineffective because he did not specialize in, or practice criminal law and he failed to perform any investigation, research, discovery or review of any of the documents in the case. *Id*. at PageID.10760. Brown contends that Kraus did not exercise due diligence before urging her to participate in a proffer meeting with the Government and Brown's doing so was done in haste. *Id*.

## III.   ANALYSIS

Rule 11(d) allows a defendant to withdraw a plea of guilty in three narrow instances: (1) before the court accepts the plea, for any reason or no reason and (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects

a plea agreement under 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11. "A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Id*. quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.1992). The goal of Rule 11 is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991).

Here, the Court has accepted Brown's plea. Therefore, Brown must show fair and just reasons to withdraw the guilty plea. The Court must consider several factors to determine whether the defendant has met its burden of proving that withdrawal is for fair and just reasons. Such factors include but are not limited to:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system;

5

and (7) potential prejudice to the government if the motion to withdraw
is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir.1994). No one factor is

controlling. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996).

### 1. The amount of time that elapsed between the plea and the motion to withdraw it.

Brown entered a plea of guilty to one count of conspiracy to commit health

care fraud in violation of 18 USC §1349 on May 29, 2018. Brown filed the present

motion to withdraw her guilty plea on October 22, 2022, more than four years later.

While Brown urges the Court to consider the fact that the filing came quickly after

the appointment of new counsel, "the first factor is a straightforward consideration

of the length of time before the motion was filed." *United States v. Fofana*, 50 F.

App'x 725, 728 (6th Cir. 2002). In her reply, Brown cites *United States v.

McTiernan*, 546 F.3d 1160 (9th Cir. 2008) to support the argument that Brown's

delay is acceptable because she had a different prior attorney. However, the Sixth

Circuit has ruled that the Ninth Circuit's approach in *McTiernan* "conflicts with

binding precedent in this circuit." *United States v. Bradford*, 822 F. App'x 335, 338

(6th Cir. 2020).

There is a four-year gap between Brown's guilty plea and the motion to

withdraw that plea. Indeed, "[t]he denial of such motions has been upheld where the

defendant delayed in moving for withdrawal for 67 days, 55 days, and as little as

6

five weeks." *Id.* see *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir.1988) (55 days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir.1987) (35 days). Therefore, this factor weighs heavily in favor of denial.

**2. The presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings.**

Brown argues that she did not move earlier because she "had no experience or knowledge with the criminal justice system and blindly trusted the advice and recommendations of her civil attorneys at FosterSwift, who did not practice criminal law at the federal or state level." [ECF No. 775, PageID.10466]. Brown's brief in support of withdrawal relies heavily on the seven factors discussed in *U.S. v. Valdez*, 362 F.3d 903 (6th Cir. 2004) and others which Courts in this Circuit use to guide the analysis to determine whether a defendant has provided fair and just reasons for withdrawal.

"In claiming ineffective assistance of counsel in the context of a guilty plea, a defendant must show that his or her counsel's performance was deficient, and that the deficient performance caused the defendant to reach a different decision regarding his or her guilty plea." *Haynes v. Burke*, 115 F.Supp.2d 813, 817-818 (E.D. Mich. 2000) citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); see also *Strickland v. Washington*, 466 U.S. 668, 669, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, the test for determining whether Brown's

counsel provided ineffective assistance to her is two-fold. The Court must first determine whether Mr. Krause's performance fell below an objective standard of reasonableness under present professional norms and that counsel's unreasonable actions or inactions caused Brown to take the plea where she otherwise would have insisted on going to trial. *U.S. v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011).

In *Haynes v. Burke*, 115 F.Supp.2d 813 (E.D. Mich. 2000), this Court granted petitioner's 28 U.S.C. § 2254 motion to withdraw his guilty plea on the basis of ineffective assistance of counsel under circumstances vastly different from the present matter. In *Haynes*, petitioner was sixteen and charged with/pled guilty to first degree murder per the advice of counsel. While counsel had advised petitioner that the trial judge had discretion on whether to sentence petitioner as a juvenile or an adult, counsel failed to inform petitioner that the prosecutor had the right to appeal any juvenile sentence and attain a sentence up to life without the possibility of parole, which in fact occurred. *Haynes*, 115 F.Supp.2d at 815.  The trial court granted petitioner's motion to withdraw the guilty plea noting that "trial counsel advised petitioner to plead guilty without giving consideration to the prosecutor's appeal rights" along with the fact that petitioner was sixteen in the ninth grade at the time of the proceedings and claimed his innocence to the offense. *Id*. at 815-16. The trial court further found that defense counsel's performance suggested promises of leniency and incorrect statements of law rendering it ineffective and making the plea

8

involuntary and made as a result of defective performance. *Id*. at 816. The prosecutor successfully appealed the juvenile sentence, and petitioner was resentenced as an adult to life without parole.

For similar reasons, this Court found that petitioner in his was entitled to withdraw his plea. The Court noted that "[b]ecause of petitioner's young age, petitioner was particularly reliant on his attorney's advice to plead guilty to the offense in this case." *Id*. at 819. The Court further found that:

> In light of the fact that petitioner pleaded guilty to an offense which normally carries a mandatory nonparolable life sentence, he has shown a reasonable probability that had he known that the prosecutor could appeal the imposition of a juvenile sentence, thus leaving the trial court with only the severest sentencing option available in the State of Michigan, he would not have pleaded guilty.

*Id*.

The Sixth Circuit upheld this ruling in *Miller v. Straub*, 299 F.3d 570 (6th Cir. 2002), also a § 2254 action, noting that a reduced likelihood of being sentenced as an adult was the sole benefit of the guilty plea before the trial court, a benefit which Haynes did not know could be deprived by the prosecutor's right to appeal. *Miller v. Straub*, 299 F.3d 570, 582 (6th Cir. 2002). The *Haynes* and *Miller* courts both paid close attention to the petitioner's age, education, and the prejudice which resulted from the counselor's failure to advise of the real possibility that Haynes could be resentenced as an adult and face the maximum penalty of life without the possibility

of parole, necessitating withdrawal of the guilty plea despite the fact that the motion came almost a year later.

On the other hand, in *U.S. v. Wynn*, 663 F.3d 847 (6th Cir. 2011), on direct appeal, the Sixth Circuit found that the district court did not abuse its discretion when it denied defendant's motion to withdraw his guilty plea. There, defendant claimed ineffective assistance due to counsel's failure to seek certain exculpatory evidence, among other reasons. *Id*. at 850. The court found that *Strickland* imposes a duty to investigate upon counsel, however, defendant could not show that he was prejudiced by counsel's failure to obtain the allegedly exculpatory evidence, or that the evidence was relevant or favorable. *Id*. at 851. Furthermore, several of the *Valdez* factors weighed against withdrawal. *Id*.

The present matter is more consistent with the outcome in *Wynn*. Here, Brown, in a motion prior to sentencing, claims ineffective assistance of counsel based on her previous counsel's failure to request pre-indictment discovery which could have revealed a weak case against her and Mr. Krause's lack of experience in similar cases. The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Brown has not shown that the presence of pre-indictment discovery would have changed the outcome in her taking a plea, that the evidence was

exculpatory, relevant, or foreseeable, or that his advice to take the plea was unreasonable.

At the hearing on Brown's motion to withdraw, Mr. Scharg highlighted several documents which he purports was all the evidence against Brown at the time she took the plea. Mr. Scharg stated that had former counsel been experienced in criminal defense and been aware of the little evidence against Brown, he never would have advised Brown to take the plea. While this may be so, this does not overcome the strong presumption that the failure to request or review discovery was not sound legal strategy. Brown argues that she feared she would receive a more stringent sentence if she did not take the plea, which is a fear that most defendants likely have and is the likely reality of her situation. If Brown did not negotiate a plea as early as she did in the case, it is likely that more evidence could have mounted against her, and her bargaining power would diminish dramatically. Most of the defendants in this matter have been sentenced to lengthy periods of incarceration while Brown only faces about three years. [ECF No. 775-3]. While the Court is sensitive to the fact that Brown is a mother and wife and going to jail would be highly inconvenient, it must be noted that the penalty she faces here is more than favorable given the potential outcome of trial.

Unlike the defendants in *Haynes* and *Miller*, Brown has significant education. Despite that education, she went with the first law firm she met with to represent her

11

in this matter. At the hearing, Mr. Scharg argued that the FosterSwift website showed that the firm had little to no experience in the area of criminal defense. Nevertheless, Brown claims that she "blindly trusted" her counsel's advice. It is difficult to believe that an individual with advanced degrees did not have the capacity to consult other attorneys in this matter or to question the information presented to her. This is not a situation where Brown could not afford to retain an attorney, she simply retained the wrong attorney because she, herself, failed to investigate. The evidence shows that she carefully considered the plea agreement with her husband and was unwavering in the plea hearing before the Court and in her commitment to cooperate with the government which continued for the four years prior to Brown's motion. It is also notable that the conversation surrounding the plea began in March of 2018 and was not entered until almost three months later. [ECF No. 775, PageID.10468]. Further, it is ironic that Brown only submits her own affidavit in support of withdrawal and nothing from anyone else, including her husband with whom she discussed her plea, showing that she maintained her innocence. Like the defendant in *Wynn*, there was still at least a two-and-a-half-month lapse between Brown being appointed new counsel and the motion to withdraw.

At the plea hearing, Brown stated that she was satisfied with the advice and services she had received from her attorney. [ECF No. 358, PageID.3005]. She also stated that she understood that she was giving up her right to go to trial and to be

presumed innocent until proven guilty beyond a reasonable doubt by the Government. *Id*. at PageID.3005-06. Brown urges the Court to consider the fact that substitute counsel "notified the Court without delay" of Brown's need to withdraw the plea upon his preliminary review of the facts and circumstances. [ECF No. 775, PageID.10466-67].

Notably, Brown does not argue that she was under the impression that she could not withdraw her plea at any point throughout the four-year gap. She does not claim to have been coerced into taking the plea or that her attorney never informed her that she could withdraw. Instead, it seems she remained committed to the plea by cooperating in the instant case and other unrelated investigations. [ECF No. 780, PageID.10748]. Brown stayed committed to the advice she received from her first attorney and took no meaningful steps toward withdrawal until the time for sentencing drew nearer. Therefore, this factor favors denial.

### 3. Whether the defendant has asserted or maintained her innocence.

Brown argues that she "maintained her innocence prior to her guilty plea and that belief has never wavered or changed." [ECF No 775, PageID.10470-71]. She further asserts that "her decision to plead guilty was based upon her counsel's representation that she had no [sic] other options or choices, and that her rejection of the plea offer would result in a substantial term of imprisonment away from her

family." *Id*. at PageID.10471. However, in the e-mail exchange provided by Brown, she states that she considered the impacts of taking the plea deal and not taking the plea deal and seemingly how that would impact her ability to practice medicine again, not be subject to jail time, and continue to be around her family. *Id*. at PageID.10561. While Brown expressed that she did not believe she had committed the alleged conspiracy, she did not deny the fact that she had involvement in the furtherance thereof.

Brown's argument contradicts the statements she made in open court during her plea hearing. When asked to explain her involvement in the conspiracy to which she plead guilty, Brown stated as follows:

**Mr. Foster:** Dr. Brown, were you a licensed physician, the Medical Director of Professional Patient Care, and the owner of Advanced Professional Patient Care?

**The Defendant:** Yes.

**Mr. Foster:** Were Professional/Advanced located in the Eastern District of Michigan?

**The Defendant:** Yes.

**Mr. Foster:** And from in or around 2014 to in or around 2017 were Professional/Advances at certain times located in a building that was owned by an individual named Tasadaq Ali Ahmad?

**The Defendant:** Yes.

**The Court:** And did Mr. Ahmad select National Laboratories, and what's referred to as Laboratory A in the Rule 11 Plea Agreement, as

14

laboratories for you to refer samples to for the ordering of urine drug testing?

**The Defendant:** Yes.

**Mr. Foster:** Unduly influencing your referral decision?

**The Defendant:** Yes.

**Mr. Foster:** And did you and others order urine drug testing by National Laboratories and Laboratory A that was medically unnecessary?

**The Defendant:** Yes.

**Mr. Foster:** And during the course of that conspiracy involving you, Mr. Ahmad, and others, did you cause the submission of false and fraudulent claims by National Laboratories to Medicare in the approximate amount of $308,553?

**The Defendant:** Yes.

**Mr. Foster:** In addition did you also refer Medicare beneficiaries to home health providers, including U.S. Home Health Care and other home health agencies for medically unnecessary home health services?

**The Defendant:** Yes.

[ECF No. 358, PageID.3024-26]. At no point during Brown's plea hearing did she indicate that she did not believe that she was guilty. Brown also did not waiver in the factual basis for the charge of conspiracy. See *Id*. at PageID.3026:

**The Court:** Okay. And now turn to Page 2 as I asked you. There's a Paragraph C, and it continues on Page 3 and 4 if you would read that to yourself. I'm going to ask you a couple questions about it.

15

**The Defendant:** Okay.

**The Court:** Is that an accurate basis for your plea of guilty?

**The Defendant:** Yes, ma'am.

**The Court:** And so that Paragraph C is correct in all regards?

**The Defendant:** Yes, ma'am.

The "Factual Basis for Guilty Plea" section of Brown's Rule 11 Agreement states in part that "Brown knowingly and willfully conspired with others to defraud Medicare, in violation of 18 U.S.C. § 1349." [ECF No. 775-3]. It further states that Brown and others "conspired to commit health care fraud, whereby claims were submitted for urine drug testing that was not medically necessary." *Id*. It further states that "Brown would cause the submission of false and fraudulent claims by National Laboratories to Medicare[.]" *Id*. Brown agreed that the description was an accurate basis for her plea and "correct in *all* regards[.]" [ECF No. 358, PageID.3026] (emphasis added). There is no evidence that Brown did not believe that she was guilty of the crime alleged.

This factor weighs in favor of denial as Brown has not shown that she maintained her innocence.

**4. The circumstances underlying the entry of the guilty plea.**

16

Brown does not challenge the colloquy of the plea hearing. She simply maintains that her attorney was not competent to handle her case and failed to provide her with effective assistance. Brown does not assert that she did not have adequate time to consider the plea or that it was forced upon her to agree. While the Court acknowledges that making a decision which could impact an individual's freedom is not an easy one, it is not clear from the facts presented that the circumstances in which Brown plead guilty to the charge should result in withdrawal.

5. **Defendant's nature, background, and prior experience with the criminal justice system.**

Brown was raised in a military family. She earned a bachelor's degree from Spelman College, a Master of Public Health degree from the University of South Carolina, and a Doctorate Degree in Medicine from Morehouse School of Medicine. [ECF No. 780, PageID.10754]. She practiced medicine and owned a professional medical business. She has no prior contact with the criminal justice system. Brown has not argued that she did not understand the proceedings or the consequences of her guilty plea. See *United States v. Catchings*, 708 F.3d 710, 719 (6th Cir. 2013). In fact, it is evident that she pondered different outcomes before making her decision. Therefore, this factor weighs against withdrawal.

6. **Potential prejudice to the government if the motion to withdraw is granted.**

17

While the Court is not required to consider this factor because Brown has not provided a fair and just reason for allowing withdrawal, *Id*.; *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir.1987), the Court considers the fact that most if not all of the fifteen Defendants have been adjudicated, with the most recent case closing in the spring of 2022. As the Government argues, many of the victims are elderly and their availability is likely to be impacted by the lapse in time. Furthermore, the cooperating witnesses have already been sentenced and have less incentive to cooperate. This factor favors denial.

Brown has not shown that she is entitled to withdraw her plea of guilty.

## IV.    CONCLUSION

In light of the foregoing,

IT IS SO ORDERED that Defendant's Motion to Withdraw Plea of Guilty [ECF No. 775] is DENIED.

IT IS FURTHER ORDERED that sentencing will be held on July 1, 2025, at 3:30 p.m.;

IT IS FURTHER ORDERED that sentencing memorandums shall be filed no

later than one week before the date set for sentencing.

      SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: June 4, 2025